UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GREGORY POWELL | CIVIL ACTION |
| VERSUS | No. 11-640 |
| PRIDE OFFSHORE, INC., ET AL. | SECTION: I/4 |

### ORDER AND REASONS

Before the Court is a motion for summary judgment filed by defendant, Hercules Drilling Company ("Hercules").[1]  Plaintiff Gregory Powell ("Powell") opposes the motion.[2]  For the following reasons, the motion is **GRANTED**.

### *BACKGROUND*

Powell allegedly sustained injuries to his neck and back when he slipped on grease while climbing on drill casings as part of his work aboard the M/V Pride of Michigan (later renamed the Seahawk 2504) on March 9, 2009.[3]  Powell seeks to recover damages for medical expenses, pain and suffering, permanent residual disability, emotional stress and strain, loss of wages, and loss of enjoyment of life from Pride Offshore, Pride International, Ensco Offshore Corporation, Hercules Drilling Company ("Hercules"), Aspen Insurance Holdings, Limited, and the M/V Pride of Michigan a/k/a Seahawk 2504 ("Seahawk 2504").[4]

Powell asserts that the defendants have become related to one another through a series of mergers and acquisitions.  Powell alleges that one or more of the defendants: (1) failed to provide a seaworthy vessel; (2) failed to provide a properly equipped vessel; (3) failed to

---

[1] R. Doc. 58.
[2] R. Doc. 65.
[3] R. Doc. No. 1, ¶ ¶ 2, 10-11; R. Doc. No. 56, ¶ ¶ 22-23.
[4] R. Doc. No. 1 at ¶ 3; R. Doc. No. 56, ¶ ¶ III.

adequately train their employees as to safe operating procedures on a vessel; and (4) failed to provide plaintiff with a safe place to work.[5]

With respect to Hercules, plaintiff asserts that Hercules is liable as the reported purchaser of the assets and some liabilities of Seahawk Drilling, Inc. ("Seahawk"), which was formerly Pride Offshore.[6] Hercules argues that it did not assume Seahawk's liabilities for plaintiff's claims.[7] Plaintiff argues that there are genuine issues of material fact in dispute and that further discovery is required.[8]

## *LAW AND ANALYSIS*

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex,* 477 U.S. at 323; *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1195 (5th Cir.1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp .,* 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating " 'some metaphysical doubt

---

[5] Id. at ¶ 19.
[6] Id. at ¶ ¶ 5-6.
[7] R. Doc. No. 58-2, pp. 3-4.
[8] R. Doc. No. 65, p. 4.

as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp .,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see Hunt v. Cromartie,* 526 U.S. 541, 552 (1999).

Powell urges in his opposition to Hercules's motion for summary judgment that "[d]iscovery is still in its infancy stages, and Plaintiff requires more time to develop its case against Hercules."[9]  However, Powell has not complied with Fed. R. Civ. P. 56(d) (formerly 56(f)) and set forth by affidavit or declaration why the Court should decline to rule on Hercules's motion for summary judgment pending further discovery.  *Beverly v. Wal-Mart Stores, Inc.*, 2011 WL 2437835, at *2 (5th Cir. 2011).  A Rule 56(d) request to defer ruling on a motion for summary judgment "may not be invoked by the mere assertion that discovery is incomplete." *Coleman v. Omega Protein, Inc.*, 2011 WL 976543, at *3 (E.D. La. March 15, 2011) (quoting *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1286 (5th Cir. 1990)).  As Powell has not satisfied his burden pursuant to Rule 56(d), the Court will address Hercules' motion for summary judgment.

Powell has asserted an *in rem* cause of action against the Seahawk 2504 predicated on a maritime lien that arose when he was injured aboard the vessel.[10]  Powell contends that because a

---

[9] R. Doc. No. 65, p. 4.
[10] R. Doc. No. 56, p. 1.

3

maritime lien attaches to a vessel when it arises, and consequently liability follows the vessel regardless of the owner, it is of no relevance whether Hercules expressly or impliedly agreed to assume the lien when it purchased the Seahawk 2504.[11]  Powell has also asserted an *in personam* claim against Hercules as the ship's current owner.[12]

A maritime lien is a "privileged claim upon maritime property, such as a vessel, arising out of services rendered to or injuries caused by that property."  THOMAS J. SCHOENBAUM, 1 ADMIRALTY & MAR. LAW § 9-1 (5th ed.).  The lien arises and attaches to the vessel at the time the tort occurs.  *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 602 (5th Cir. 1986).  Moreover, a maritime lien:

> [M]ay be defined as a property right that adheres to the vessel wherever it may go. Such a lien has been held to follow the vessel even after it is sold to an innocent purchaser.  The maritime lien is a lien on the vessel, "and only indirectly, inasmuch as it conflicts with the owner's rights in the vessel, it is connected with the owner."

*Id.* (internal citations omitted).  Accordingly, Powell's argument that the Court must deny Hercules's motion for summary judgment because it owns the Seahawk 2504 muddies the issue at bar.  The Seahawk 2504's liability *in rem* and Hercules's liability *in personam* for Powell's alleged injuries are two separate questions, as "[t]he maritime lien concept . . . personifies a vessel as an entity with potential liabilities *independent and apart from the personal liability of the owner.*"  *Id.* (internal citations omitted) (emphasis added).  The issue before the Court with respect to Hercules's motion for summary judgment is Hercules's *in personam* liability for Powell's alleged injuries.

Hercules and Seahawk entered into an asset purchase agreement ("APA") on February 11, 2011.  The transaction closed on April 11, 2011.  As part of the transaction, Hercules

---

[11] R. Doc. No. 65, p. 2.
[12] R. Doc. No. 1, ¶ 19.

purchased the Seahawk 2504, the ship on which Powell sustained his alleged injuries.[13] Hercules argues that it cannot be held liable for Powell's injuries suffered onboard the Seahawk 2504 because "Seahawk retained all personal injury claims arising before closing on the sale of the assets and because the plaintiff's claim was expressly included as one of the legal proceedings for which Seahawk retained liability under the APA."[14]

The APA's choice of law provision provides that the agreement shall be construed in accordance with Texas law.[15] Texas corporations law provides that "a person acquiring property described by this section may not be held responsible or liable for a liability or obligation of the transferring domestic entity that is not expressly assumed by the person." TEX. BUS. ORG. CODE § 10.254(b).[16] The Texas courts have recognized that "Texas strongly embraces the non-liability rule. To impose liability for a predecessor's torts, the successor corporation must have expressly assumed liability." *Lockheed Martin Corp. v. Gordon*, 15 S.W.3d 127, 139 (Tex. App. 2000). "The plaintiff must plead successor liability." *Network Staffing Serv. v. Bay View Commercial Fin. Group, Inc.*, 2005 Bankr. LEXIS 88, at *12-13 (Bankr. N.D. Tex. 2005) (citing *Owners Ass'n of Pecan Square, Inc. v. Capri Lighting, Inc.*, 1992 WL 186261, at *3 (Tex. App. 1992)). "Pleadings of successor liability are subject to the lenient pleading requirements of Fed. R. Civ. P. 8." *Network Staffing Serv.*, 2005 Bankr. Lexis at *13.

Powell alleges that the defendants in this lawsuit "are all part of a series of mergers and acquisitions transactions, involving the Plaintiff's employer at the time of the accident made the

---

[13] Section 2.1 of the asset purchase agreement defines the assets that Hercules purchased from Seahawk and references Schedule 2.1(a). Schedule 2.1(a) lists the Seahawk 2504 as one of the purchased vessels. R. Doc. No. 58-4, p. 8, and R. Doc. No. 58-8, p. 13.
[14] R. Doc. No. 58-2, pp. 3-4. Powell filed a previous lawsuit against
[15] R. Doc. 58-7, p. 8.
[16] Formerly TEX. BUS. CORP. ACT § 5.10(B) (expired Jan. 1, 2010). TEX. BUS. ORG. CODE § 10.254(b) replaces the old statute with similar language.

subject of the this suit."[17] Powell further alleges that "Plaintiff is unsure of and cannot be certain what the various mergers and acquisition agreements for these various transactions contain, especially in terms of the transfer of liabilities and hold harmless agreements. . . . Therefore, . . . Plaintiff includes all parties in his Complaint out of an abundance of caution until the true nature of the transfer of assets and liabilities can be ascertained."[18]

Powell alleges that his injuries occurred on the Seahawk 2504 on March 9, 2009.[19] Hercules entered into the asset purchase agreement with Seahawk nearly two years after Powell's alleged injuries. As part of that agreement, Hercules purchased the Seahawk 2504.[20]

Pursuant to Section 2.8(a) of the APA, Seahawk retained all liabilities that Hercules did not expressly assume:

> Subject to the Transfer Order, Sellers shall retain and be solely liable for and hereby expressly agree to retain any and all of their respective Liabilities not expressly assumed by [Hercules] in Section 2.7 (collectively, the "Retained Liabilities"), regardless of whether any such retained liability is disclosed herein or in any Schedule hereto.[21]

Furthermore, pursuant to Section 2.8(a)(vii) of the APA, Seahawk retained certain liabilities for legal proceedings despite the transfer of assets to Hercules:

> *Legal proceedings.* Any and all Liabilities of [Seahawk] that relate to any Proceeding (A) involving the Purchased Assets or Business, including . . . personal injury . . . and tort Claims, that is (1) pending or threatened as of Closing, or (2) commenced after the Closing but that arises out of or relate to any event, omission, or occurrence happening as of or prior to the Closing, or (B) set forth in Schedule 2.8(a)(vii).[22]

---

[17] R. Doc. No. 1, ¶ 4.
[18] R. Doc. No. 1, ¶¶ 8-9.
[19] No. 11-640, R. Doc. No. 1, ¶ 11.
[20] No. 11-640, R. Doc. No. 58-4 to 58-12. Section 2.1 of the APA outlines the assets that Hercules purchased from Seahawk and references Schedule 2.1(a). Schedule 2.1(a) lists the Seahawk 2504 as one of the purchased vessels. R. Doc. No. 58-8, p. 13.
[21] No. 11-640, R. Doc. No. 58-5, p. 3.
[22] No. 11-640, R. Doc. No. 58-5, p 4.

Finally, pursuant to Section 2.7 of the APA, Hercules only expressly agreed to assume liability for certain specific categories of terms set forth in the agreement. These included "Working Capital Liabilities," "Contracts," "Permits," "Claims arising from Assumed Liabilities," and "Performance Bond."[23]

Powell's alleged injuries occurred well before Seahawk and Hercules closed on the asset purchase on April 11, 2011, and Powell initiated this action on March 23, 2011, before the parties closed the transaction.[24] The Court concludes from these undisputed facts and the text of the APA that Hercules did not expressly assume any tort liabilities for Powell's alleged injuries. As such, Hercules has no *in personam* liability for Powell's alleged injuries.[25]

Accordingly, Hercules's motion for summary judgment is **GRANTED**. Powell's *in personam* claim against Hercules is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, July __19th__, 2011.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[23] No. 11-640, R. Doc. No. 58-5, pp. 2-3.

[24] Powell initiated a separate lawsuit for these same alleged injuries against Pride International, Inc. and Seahawk Drilling, Inc., on February 24, 2010. Case No. 10-617, R. Doc. No. 1. That case was stayed and closed for statistical purposes on February 16, 2011, because Seahawk filed for protection pursuant to Bankruptcy Code Chapter 11 in the U.S. Bankruptcy Court for the Southern District of Texas (Case No. 11-20089).

[25] The Court does not address the Seahawk 2504's *in rem* liability for Powell's alleged injuries as the Court did not construe the original motion as requesting dismissal of the *in rem* claim. The Seahawk 2504 is granted leave to file a motion for summary judgment regarding whether any maritime lien for Powell's alleged injuries survived the transfer of assets from Seahawk to Hercules.